ESTATE of Fred L. SPICKNALL, Deceased, Katherine Spicknall, Administratrix, and Katherine Spicknall, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16457.

United States Court of Appeals
Eighth Circuit.

Jan. 11, 1961.

John A. Shaw, St. Louis, Mo., made oral argument for petitioners. Pollock, Ward Klobasa & Shaw, T. Hartley Pollock, William E. Buckley, St. Louis, Mo., and J. Andy Zenge, Jr., Canton, Mo., were with him on the brief.

C. Guy Tadlock, Atty., Dept. of Justice, Washington, D. C., made argument for respondent. Charles K. Rice, Asst. Atty. Gen., Dept. of Justice, Lee A. Jackson, A. F. Prescott, Harold M. Seidel, Attys., Dept. of Justice, Washington, D. C., were with him on the brief.

Before SANBORN, WOODROUGH and MATTHES, Circuit Judges.

SANBORN, Circuit Judge.

The Tax Court, in a decision not officially reported, sustained a determination of the Commissioner of Internal Revenue that there were deficiencies in the income tax of Fred L. Spicknall and Katherine Spicknall, his wife, for the years 1952 and 1953, of $462.98 and $3,468.26, respectively, resulting from the disallowance of deductions taken in

their joint returns for installment payments made by Fred Spicknall to his divorced wife, Maude Spicknall. This Court is now asked to review and reverse the decision of the Tax Court.

The facts are not in dispute. Fred and Katherine Spicknall were, in 1952 and 1953, residents of LaBelle, Missouri. They filed joint federal income tax returns with the Director of Internal Revenue at St. Louis, Missouri. Fred Spicknall died in March 1958. Katherine Spicknall is the duly appointed administratrix of his estate.

Fred Spicknall was married twice. His first wife, Maude Spicknall, he married at Lewistown, Illinois, in December 1930. They separated in September 1946. On June 4, 1949, they entered into a carefully drawn, detailed and comprehensive separation agreement settling their property and other rights and providing for the care, custody, maintenance and education of their two children. The agreement had a paragraph (5) reading as follows:

"First party [Fred Spicknall] is to pay to second party [Maude Spicknall] the sum of One Hundred Fifty Dollars ($150.00) per month for a full period of twelve years next ensuing from the dated base of June 1, 1949. It is further understood and agreed that the payments will be made in semi-annual payments, in advance, of Nine hundred dollars ($900.00) as of June 1, 1949, and to so continue for each six months, as above during the full twelve year period."

Maude Spicknall on April 19, 1951, brought a suit for divorce in the Circuit Court of Lewis County, Missouri, which was removed to the Circuit Court of Marion County, Missouri, on change of venue. On January 17, 1952, Maude and Fred Spicknall, in contemplation of their being divorced, entered into the following stipulation, which was filed on January 19, 1952, in the divorce action:

"Whereas, the parties, plaintiff and defendant, have heretofore and

on the fourth (4th) day of June, 1949 entered into a separation agreement, marked Exhibit 'A' and made a part of plaintiff's petition; and,

"Whereas, the parties have agreed that Paragraph 5 of said original separation agreement be modified;

"Now Therefore, it is agreed that Paragraph 5 of the separation agreement, marked Exhibit 'A' and made a part of plaintiff's petition, shall be modified and, when and so modified, shall read as follows:

"(5) First Party is to pay to Second Party the sum of Three Hundred Dollars ($300.00) per month for a period of Ten (10) years, ensuing from the date of the decree of divorce in this case. The first monthly payment of Three Hundred Dollars ($300.00) shall be made Thirty (30) days after the date of the decree herein and each succeeding Three Hundred Dollars ($300.-00) payments [sic] shall be made on the same date of each succeeding month thereafter, until One Hundred Twenty (120) monthly payments have been made; and that the court shall enter a decree for the payment of such monthly payments in accordance with this provision."

The divorce action was heard on January 19, 1952, and on that day a decree granting Maude Spicknall an absolute divorce was entered. The decree read, in part, as follows:

"The court doth find that the parties hereto have heretofore and on the 4th day of June, 1949 entered into a separation agreement in writing, and that the parties have this day filed in court their stipulation modifying the fifth paragraph of the original separation agreement, which fifth paragraph as provided by the modifications, reads, when so modified, as follows:

"'(5) First Party is to pay to Second Party the sum of Three Hundred Dollars ($300.00) per month for a period of Ten (10) years, next

ensuing from the date of the decree of divorce in this case. The first monthly payment of Three Hundred Dollars ($300.00) shall be made Thirty (30) days after the date of the decree herein and each succeeding Three Hundred Dollars ($300.-00) payments [sic] shall be made on the same date of each succeeding month thereafter, until One Hundred Twenty (120) monthly payments have been made; and that the court shall enter a decree for the payment of such monthly payments in accordance with this provision.'

"The court doth find that this court has jurisdiction over the parties hereto and the cause of action; that the parties were married the 18th day of December, 1930 at Lewistown, Illinois and have been separated since the month of September, 1946; that the plaintiff is the innocent and injured party and that the allegations of Count I of the petition are true, and plaintiff is entitled to a divorce from the defendant.

"Wherefore, it is ordered, adjudged and decreed that the original separation agreement, dated June 4, 1949, be and the same is hereby approved, and a stipulation filed this 19th day of January, 1952 modifying paragraph 5 of the original separation agreement as set out above, is in all things approved, and the provisions of both such agreements are made a part of this decree; that plaintiff be and she is hereby finally divorced from the defendant; and that the plaintiff have and recover of the defendant the sum of Three Hundred Dollars ($300.00) per month for a period of ten (10) years next ensuing from the date of this decree of divorce, the first monthly payment of Three Hundred Dollars ($300.00) being due and payable the 19th day of February, 1952 and Three Hundred Dollars ($300.00) on the 19th day of each succeeding month thereafter until 120 monthly payments of Three Hundred Dollars ($300.00) have been paid, and that plaintiff have execution therefor."

Fred Spicknall married his second wife, Katherine, in 1952, after he was divorced. Commencing on February 19, 1952, he paid to his divorced wife $300 a month—a total of $3,300 in 1952 and $3,600 in 1953. It was for these amounts that Fred and Katherine Spicknall took deductions in their joint returns for the years 1952 and 1953, respectively.

The petitioners contended before the Tax Court, and contend here, that the installment payments made by Fred Spicknall to his divorced wife in 1952 and 1953 were deductible from his gross income under Sections 22(k) and 23(u) of the Internal Revenue Code of 1939, as amended by Section 120 of the Revenue Act of 1942, c. 619, 56 Stat. 798, 816, 817, 26 U.S.C. 1952 Ed. §§ 22(k) and 23(u).

So far as pertinent, Section 22(k) provides:

"§ 22. *Gross income.* * * *

"(k) *Alimony, etc., income.*

"In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments * * * received subsequent to such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed upon * * * such husband under such decree or *under a written instrument incident to such divorce or separation* shall be includible in the gross income of such wife, * * *. Installment payments discharging a part of an obligation the principal sum of which is, in terms of money or property, specified in the decree or instrument shall not be considered periodic payments for the purposes of this subsection; except that an installment payment shall be considered a periodic payment for the purposes of this subsection if such principal sum, by the terms of the decree or

instrument, may be or is to be paid within a period ending more than 10 years from *the date of such decree or instrument,* * * *." [Italics supplied.]

Section 23(u) provides, in pertinent part:

"§ 23. *Deductions from gross income.*

"In computing net income there shall be allowed as deductions:

\* \* \* \* \*

"(u) *Alimony, etc., payments.*

"In the case of a husband described in section 22(k), amounts includible under section 22(k) in the gross income of his [divorced] wife, payment of which is made within the husband's taxable year. * * *"

It is, of course, apparent that if it was the decree of divorce, dated January 19, 1952, which imposed the legal obligation upon Fred Spicknall to make the installment payments to his divorced wife, the payments were not deductible from his gross income. If, on the other hand, it was the settlement stipulation or agreement, dated January 17, 1952, which imposed the obligation, the payments were taxable income to Maude Spicknall and were deductible by Fred Spicknall in computing his income.

In reaching the conclusion that the legal obligation of Fred Spicknall to make the payments was imposed by the divorce decree, and not by the stipulation, the Tax Court said:

"Both parties agree that the terminal date of the last payment is January 19, 1962. Petitioners contend that the legal obligation of Fred Spicknall to make payments of $300 per month to his former wife arose as of January 17, 1952, under the stipulation of January 17, 1952, which modified the separation agreement of June 4, 1949, and that therefore the requirement of a period of more than ten years is satisfied. On the other hand, it is respondent's position that the legal obligation to make the $300 monthly payments

was imposed by the decree of divorce and that payments thereunder, being payable within a period of not more than ten years from the date of the decree, are not deductible under section 23(u).

"We agree with respondent's position. The stipulation of January 17, 1952, bears the caption of the divorce proceeding and was filed as a part of such proceeding. It provides for the payment of $300 per month for a period of ten years 'ensuing from the date of decree of divorce.' In stipulating that 'the Court shall enter a decree for the payment of such monthly payments in accordance with this provision' of the stipulation, it is clear that the legal obligation to make the payments was intended to be one imposed by the decree of the court. The decree entered not only incorporated the stipulation and the previous agreement, but it provided that 'the plaintiff have and recover of the defendant' the stipulated sums and further directed that 'the plaintiff have execution therefor.' These provisions are further evidence that the obligation was intended to be and was imposed by the decree.

"It is also to be noted that the provision of the stipulation referred to provided for the payment of $300 per month for a period of ten years 'ensuing from the date of the decree of divorce.' It is therefore obvious that the date of the decree was not only intended to be, but is in fact, the effective date of the legal obligation. The stipulation itself imposed no legal obligation and was completely ineffective without the decree.

"In our opinion the legal obligation to make the $300 monthly payments was clearly imposed by the divorce decree. Since, as directed by the decree, the first monthly payment became due and payable February 19, 1952 (not February 19 [sic], 1952, as would have been the case under paragraph 5 of the sep-

aration agreement as modified by the stipulation), and the last of the 120 monthly payments will become due and payable January 19, 1962, it is likewise clear that the monthly payments imposed by the decree are payable within a period of not more than ten years from the date of the decree and, accordingly, do not constitute periodic payments within the meaning of section 22(k) and are not deductible under section 23(u). See and compare Marie M. Newman, 26 T.C. 717, affd. (C.A.8, 1957) 248 F.2d 473."

The contention of the petitioners is that the decision of the Commissioner and of the Tax Court that the instrument which imposed the legal obligation upon Fred Spicknall to make the stipulated payments to his divorced wife was the divorce decree of January 19, 1952, and not the stipulation of January 17, 1952, is, as a matter of law, clearly wrong.

If this were a case where different inferences reasonably might be drawn from the undisputed facts, we would unhesitatingly accept the inference drawn by the Tax Court (Crown Iron Works Co. v. Commissioner, 8 Cir.; 245 F.2d 357, 360; Commissioner of Internal Revenue v. Newman, 8 Cir., 248 F.2d 473, 475-476) and affirm. However, if the decision under review is induced by a misconception or misapplication of the law, it cannot be sustained.

It seems to be well established in Missouri and elsewhere "that husband and wife, in contemplation of a separation and divorce, may, by valid contract between themselves, settle and adjust all property rights growing out of the marital relation, including the wife's right of dower and claim for alimony, support, and maintenance. * * * Postnuptial contracts of separation are not unlawful, and such contracts when lawfully made, are sufficient to bar alimony and dower." North v. North, 339 Mo. 1226, 1230, 100 S.W.2d 582, 584, 109 A.L.R. 1061, 1063. The question in the North case was whether the allowance provided for the wife in the pre-divorce contract of settle-

ment, which was approved and incorporated in the divorce decree, was an allowance of alimony, granted by the decree, which could be modified or was a contractual right which could not be changed by the divorce court. The Supreme Court of Missouri held that the allowance was not alimony, but was a contractual obligation of the husband and not subject to change by the divorce court, saying (at page 1236 of 339 Mo., at page 588 of 100 S.W.2d, at page 1068 of 109 A.L.R.):

> "Our conclusion in the instant case is that the allowance made to the wife in the decree was, in effect, an approval of the contractual obligation of the husband to the wife, and not an award of alimony, and for that reason is not subject to modification. A modification of the decree would amount to a modification of the contract itself, which is not subject to revocation or modification except by consent of the parties thereto."

That case, we think, clearly demonstrates that if the Supreme Court of Missouri was called upon to decide this case, it would hold that the instrument which imposed the obligation upon Fred Spicknall to pay $300 monthly to his divorced wife was the stipulation of January 17, 1952, and was not the divorce decree entered two days later. The provision made for Maude Spicknall by the stipulation was, under Missouri law, a binding contractual obligation imposed upon Fred Spicknall by that instrument. Since the stipulation and the amended separation agreement were approved by the divorce court and made a part of the decree, the installment payments made in 1952 and 1953 were not, under Missouri law, alimony and were not imposed by the decree, but were contractual obligations imposed by the stipulation.

Missouri cases which have followed the North case are: Davis v. Davis, Mo.App., 196 S.W.2d 447; Tracy v. Tracy, Mo.App., 205 S.W.2d 947, and Jenkins v. Jenkins, Mo.App., 257 S.W.2d 250.

The Court of Appeals for the Seventh Circuit, in Harry Blum v. Commissioner of Internal Revenue, 177 F.2d 670, reviewed and reversed a decision of the Tax Court in a case similar to the instant case. Harry Blum and his wife Tillie, in contemplation of divorce, had, on February 27, 1935, entered into a property settlement contract, pursuant to which he was to pay her $120,000 in installments, the last on March 1, 1945. The decree of divorce was signed February 28, 1935, but was not formally entered and enrolled until March 2, 1935. The Commissioner determined that installment payments made by Harry Blum to his divorced wife in 1942, 1943 and 1944, pursuant to the terms of the contract of settlement, were not allowable deductions from his gross income, and assessed deficiencies accordingly. The Tax Court, upon petition for redetermination of the asserted deficiencies, sustained the Commissioner. It decided that the contract of February 27, 1935, was ineffective until the decree of divorce was actually entered or enrolled, and that the final payment date, March 1, 1945, being less than 10 years from March 2, 1935, the installment payments in controversy were nondeductible. The Court of Appeals held that the decree of divorce became effective on February 28, 1935, the day it was signed. That was more than 10 years before the date of the final payment and was therefore decisive of the problem. The court, however, went on to say (at page 673 of 177 F.2d) :

"Nevertheless we feel it proper to state that in our opinion, under the facts and circumstances of the case, the obligation of petitioner, Harry Blum, to pay the designated sums to his former wife arises from the contract of February 27, 1935. And that contract was incident to and a concomitant of the decree dissolving their marital relationship. The Superior Court of Cook County adopted the contract of February 27 and reserved jurisdiction for the purpose of enforcing the terms, conditions, provisions and obligations contained in said contract."

The Commissioner of Internal Revenue, after the decision of the Harry Blum case by the Court of Appeals, determined deficiencies in income tax of the divorced wife, Tillie Blum, for the years 1943 and 1944, by adding to her gross income the installment payments received by her from her divorced husband. These were the payments which had been held, in the Harry Blum case, to be deductible by him from his gross income. On a petition by Tillie Blum for a redetermination of the asserted deficiencies, the Tax Court held that the payments in question were not includible in her gross income. The Commissioner petitioned for a review, and the Court of Appeals reversed the Tax Court. Commissioner of Internal Revenue v. Tillie Blum, 7 Cir., 187 F.2d 177. After stating the facts in its opinion, the Court of Appeals said (at pages 179–180) :

"The obligation to make payment of the $120,000 arises from and rests upon the contract of February 27, 1935. So all payments required to be made under the terms of said contract arise from that agreement.

"The court specifically reserves jurisdiction in the cause 'only for the purpose of enforcing the terms, conditions, provisions and obligations contained in said contract upon application of either of the parties hereto; and for all other purposes this decree shall be and is hereby made final, and no further jurisdiction is reserved.'

"Under the circumstances therefor, we have no hesitancy in holding that the periodic payments to Tillie Blum under said decree were incurred by and imposed upon the husband, Harry Blum, under the terms of the contract of February 27, 1935, and are therefore under Section 22(k) of the Internal Revenue Code of the United States includible in the gross income of such wife. It follows necessarily that the husband

was entitled, under Section 23(u) of the Internal Revenue Code of the United States, to deduct the payments on the installments of $120,000 made to the wife under the same contract. Blum v. Commissioner, 7 Cir., 177 F.2d 670, 673."

[4] There are some factual differences between the instant case and the Blum cases, but we can perceive no controlling distinction. It seems apparent that if this case was under review in the Seventh Circuit, the decision of the Tax Court would be reversed. This Court is not justified in refusing to follow the decision of another Court of Appeals unless satisfied that it is erroneous. United States v. Armature Rewinding Co., 8 Cir., 124 F.2d 589, 591; Lazier v. United States, 8 Cir., 170 F.2d 521, 526, 9 A.L.R.2d 324; Birmingham v. Geer, 8 Cir., 185 F.2d 82, 85. We are not satisfied that the Blum cases were erroneously decided.

The decision of this Court in Commissioner of Internal Revenue v. Newman, 8 Cir., 248 F.2d 473, affirming a decision of the Tax Court to the effect that the legal obligation to make the installment payments to the divorced wife in that case was imposed by the divorce decree, and not by a prior property settlement agreement, is not controlling. It is true that the problem was similar to that in the Blum cases. We expressly held in the Newman case that the Blum cases were distinguishable, pointing out that the divorce decree in Newman had, in effect, supplanted and superseded the settlement agreement by supplying provisions not contained in or covered by the agreement.

The Commissioner has, in the instant case, cited Harris v. Commissioner, 340 U.S. 106, 71 S.Ct. 181, 95 L.Ed. 111. That case was also cited in the Tillie Blum case, 7 Cir., 187 F.2d 177, 180, and held to be inapplicable. There is language in the majority opinion in Harris indicating that, at least under Nevada law, a pre-divorce settlement agreement between husband and wife gives rise to no rights or duties prior to the entry of a divorce

decree. The Harris case did not involve the same problem as the instant case, the facts were not the same, and the applicable law is different.

Our conclusion is that the decision of the Tax Court is based upon a misconception of the applicable law and is therefore clearly erroneous. The decision is reversed.